**FILED**
**April 5, 2023**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**CHAPMAN CORPORATION,**
**Employer Below, Petitioner**

**vs.)    No. 21-0501** (BOR Appeal No. 2056170)
                         (Claim No. 2019017083)

**TEDDY KEMP,**
**Claimant Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Chapman Corporation, by counsel Lisa Warner Hunter, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Teddy Kemp, by counsel R. Dean Hartley, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on May 31, 2019. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its December 9, 2020, Order and held the claim compensable for chronic lymphocytic leukemia ("CLL"). The Order was affirmed by the Board of Review on May 20, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same

1

issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

See Hammons v. W. Va. Off. of Ins. Comm'r, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in Justice v. West Virginia Office Insurance Commission, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. See also Davies v. W. Va. Off. of Ins. Comm'r, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Kemp, an electrician, alleges that he developed CLL as a result of occupational benzene exposure while working at Chapman Corporation and filed an Employees' and Physicians' Report of Occupational Injury or Disease. In his application, Mr. Kemp stated that over his thirty-nine year career, he was exposed to numerous chemicals, including but not limited to benzene and/or benzene-containing chemicals or products, which have been shown to cause cancer. Mr. Kemp reported that he was first diagnosed with CLL through a bone marrow exam on February 17, 2016.

The physician's section of the claim application was completed by Amit Mehta, M.D., who indicated that Mr. Kemp had developed CLL as a result of his occupational exposure. In Dr. Mehta's medical report dated November 1, 2018, Mr. Kemp's CLL was characterized as "moderate" in severity and "daily" in frequency. It was noted that Mr. Kemp is a retired electrical contractor at two facilities, PPG Industries, Inc. ("PPG") and the Mobay/Bayer New Martinsville plant ("Mobay/Bayer"), where he was exposed to chemicals, including benzene, over a period of nearly forty years. He reported that he had to breathe fumes daily and did not recall wearing masks, gloves, or other safety equipment on a regular basis. There were occasional episodes of direct chemical contact with his skin. Dr. Mehta noted that multiple studies exist supporting the link "of longer exposure and degree of exposure and CLL link." These included a "systematic meta-analysis published in the journal of Environmental Health in 2010 by Khalade A. et. al., which found an odds ratio of 1.31 (31% increased risk) for the development of CLL from exposure." The study found that those with a higher exposure had a statistically significant trend towards a higher risk of developing CLL. Considering Mr. Kemp's daily exposure to benzene for nearly forty years, and the absence of any other risk factors, including no family history of leukemia or lymphoma, Dr. Mehta opined that it was more likely than not that benzene exposure led to Mr. Kemp's development of CLL.

The claims administrator rejected the claim on May 31, 2019. The Order stated, "[t]here isn't any evidence which causally relates your diagnosis of Chronic Lymphocytic Leukemia to your employment with Chapman Corporation." Mr. Kemp protested the claims administrator's decision.

Mr. Kemp's deposition was taken on November 4, 2019, regarding his alleged benzene exposure and diagnosis of CLL. When asked when his symptoms started, Mr. Kemp indicated that in 2011 his blood tests began showing high white blood cell counts. Although he is not receiving any treatment for his diagnosis of CLL, his condition is being monitored every six months to measure his white blood count. Mr. Kemp's mother and brother died of lung cancer. Both were heavy smokers. Although he is not a cigarette smoker, Mr. Kemp's parents smoked in the house until his father quit when he was around eighth grade. Mr. Kemp testified that his alleged exposure to benzene started in August 1975 while working at PPG doing electrical work in all departments all over the plant. Mr. Kemp worked in those areas of the Mobay/Bayer plant where benzene was stored and processed, including the tank farm, mononitrobenzene ("MNB") area, and above the waste-water trench. His work as an electrician in the MNB area required him to stand over the vessels as he was working on the instruments in the tank. Mr. Kemp testified that he was exposed to benzene and materials containing benzene in the vessels. Most of his career, he alleged that he could smell a sweet odor on a regular basis while in areas of the Mobay/Bayer plant. He denied any training or use of any type of facemask or respirator during all of his employment. Mr. Kemp last worked for the employer in February 2009. He then worked at the Mitchell powerhouse, where he was not exposed, to his knowledge, to benzene. Mr. Kemp later worked for Longview powerhouse doing the same type of work. There is no indication in the record whether Mr. Kemp was exposed to benzene while working for Longview.

Mr. Kemp introduced a letter from Peter Infante Consulting, LLC, on November 20, 2019, along with a report of Peter F. Infante, D.D.S., F.A.C.E. The firm is an organization dedicated to occupational and environmental health. In the November 20, 2019, report, Dr. Infante, stated that he has held multiple positions as professor, director, and consultant for occupational health, carcinogen identification, and epidemiology. Dr. Infante worked for the International Agency for Research on Cancer ("IARC") and was invited to meetings held in 2009 and 2017. The purpose of the meetings was to evaluate chemical and workplace exposure, including benzene. Dr. Infante conducted epidemiological studies of workers exposed to chemicals, including benzene. Dr. Infante stated that he has conducted major research on benzene toxicity to humans and received a Special Commendation from the United States Public Health Services, Centers for Disease Control, and NIOSH. Dr. Infante opined that occupational exposure to benzene can cause CLL. In support of his conclusion, he cited thirty-five pages of case reports, epidemiological studies, meta-analyses, mortality studies, governmental agency reports, industry studies, and a biological plausibility assessment. Dr. Infante also analyzed the association between benzene exposure and the risk of developing CLL using the Bradford-Hill criteria and concluded that all of the meaningful viewpoints related to causality are met in relation to benzene exposure and CLL. In his opinion, the Bradford-Hill analysis adds support to his conclusion that there is a causal association between exposure to benzene and to benzene-containing solvents and the development of CLL.

Dr. Mehta testified in a deposition on December 4, 2019, that he is a hematologist and oncologist and is board certified in both specialties. Dr. Mehta stated that he examined Mr. Kemp and reviewed his records. He concluded that Mr. Kemp's significant history of occupational exposure to benzene and benzene-containing products resulted in his CLL. Dr. Mehta considered Mr. Kemp's exposure to be clinically significant due to the direct nature of the contact, the

frequency of the contact, and the intensity of the exposure. Dr. Mehta noted that Mr. Kemp's exposure would put him at risk based upon known literature regarding the potential causation between benzene exposure and CLL. Dr. Mehta asserted that there is a large amount of medical literature establishing a link between benzene exposure and CLL. He further asserted that it is the conclusion of most hematologists that benzene causes CLL. Dr. Mehta opined that Mr. Kemp's significant benzene exposure was sufficient to cause CLL. He testified that Mr. Kemp had no other risk factors for the disease, including a family history of leukemia. Further, Mr. Kemp had a deleted 13q chromosome, which is consistent with benzene-induced leukemia. Dr. Mehta testified that based upon Mr. Kemp's medical presentation, his reported occupational exposure history, and the absence of any other known risk factors for the development of CLL, he believes that Mr. Kemp's occupational exposure to benzene was the "proximate cause of his developing chronic leukemia."

Christopher Martin, M.D., performed a Record Review on March 3, 2020, in which he noted that Mr. Kemp was seventy years old at the time of the review and had been diagnosed with CLL by Catherine Swift, M.D., on February 17, 2016. Based upon his review of the records, Dr. Martin concluded that Mr. Kemp had a diagnosis of CLL. Although he stated that it is possible, but not established, that Mr. Kemp was exposed to excessive levels of benzene through his work, Dr. Martin opined to a reasonable degree of medical certainty that the evidence did not support a finding that Mr. Kemp's CLL was the result of his occupational exposure to benzene. Dr. Martin stated that the National Cancer Institute and American Cancer Society ("ACS") provides that the median age for a diagnosis of CLL is sixty-eight years, and it is most common among males of Caucasian ethnicity. Dr. Martin opined that Mr. Wells fits the typical profile for a diagnosis of CLL among the general population. He further opined that benzene cannot be regarded as an accepted risk factor for CLL, because the ACS does not list benzene as a risk factor for developing CLL. Dr. Martin acknowledged that the IARC classified benzene as a Group 1 carcinogen; however, the classification is based on leukemia/acute non-lymphocytic leukemia. While Dr. Martin noted that the IARC believed there was a positive association between benzene exposure and CLL, the IARC did not believe the association rose to the level of supporting a conclusion that it was medically reasonable to infer a causal relationship.

Dr. Martin disagreed with Dr. Mehta's findings that Mr. Kemp's CLL was symptomatic in the form of recurrent infections and fatigue resulting in the need for immunoglobulin infusions. Dr. Martin did not believe that such an opinion is supported by the records of the treating oncologist and his primary care physician. Dr. Martin also took issue with the Khalade et. al. study cited by Dr. Mehta. He explained that the most methodologically sound study on benzene and CLL was published in 2017 by Talibov et. al., and included 20,615 cases of CLL diagnosed in 1961-2005. Dr. Martin summarized that this study did not demonstrate the association between solvent exposure and adult CLL.

The Office of Judges reversed the claims administrator's rejection of the claim and held the claim compensable for CLL in its December 9, 2020, Order. First, the Office of Judges found that the weight of the medical record clearly establishes that Mr. Kemp has a diagnosis of CLL. Second, the Office of Judges concluded that Mr. Kemp had significant occupational exposure to benzene, and he testified that he was exposed to benzene and benzene containing products for his thirty-nine years of employment working as an electrician at the Mobay/Bayer chemical plant.

4

According to Mr. Kemp's affidavit, benzene-containing products were produced at PPG and Mobay/Bayer plants. The PPG plant produced MCB, orthodichlorobenzene, and paradichlorobenzene, while the Mobay/Bayer plant produced mononitrated benzene. While working in the PPG plant for two years, Mr. Kemp stated that the chemical tank pumps leaked and were sometimes overfilled. He also could smell the sweet odor of benzene while working in the MCB department. Mr. Kemp worked in the MNB department at the Mobay/Bayer plant, and he was exposed to benzene and material containing benzene while performing electrical work on the instruments in the MNB department, where chemical upsets, overfills of the tanks, and leaking tank pumps were a regular occurrence. Mr. Kemp also worked around a waste-water trench which was comprised of chemical upsets in the MNB process. The Office of Judges found that Mr. Kemp testified that he was exposed to the sweet odor of benzene from the trench on a daily basis. He worked at the Mobay/Bayer plant for approximately twenty years. While working for the Chapman Corporation at the Mobay/Bayer plant, Mr. Kemp was tasked with replacing and rewiring large electric motors that exposed him to various chemicals. He also worked around trenches that contained chemical waste and over top of the trenches on man-lifts and walking cables. The sweet smell of benzene was also observed while working near the trenches. The Office of Judges determined that Mr. Kemp submitted sufficient evidence to show, that more likely than not, he was regularly exposed to significant amounts of benzene during the course of and as a result of his employment as an electrician. It was also found that Mr. Kemp's testimony and Dr. Mehta's medical report support such a finding.

Third, the Office of Judges determined that the weight of the medical evidence establishes that benzene exposure can cause CLL. It found that Drs. Mehta and Infante both opined that numerous studies have shown a causal connection between benzene exposure and CLL. Dr. Infante is a professional epidemiologist with an extensive resume. In support of his position, Dr. Infante submitted over thirty pages of case reports, epidemiological studies, meta-analyses, mortality studies, governmental agency reports, industry studies, and a biological plausibility assessment. The Office of Judges noted that Dr. Mehta is a hematologist and oncologist who primarily works with hematologic malignancies, such as leukemia and lymphoma. Dr. Mehta opined that Mr. Kemp's benzene exposure more likely than not caused his CLL. Chapman Corporation argued that benzene does not cause CLL and relied on the report of Dr. Martin. The Office of Judges noted that Dr. Martin is an occupational medicine physician who opined that the medical evidence did not support a finding that Mr. Kemp's CLL was causally related to his occupational exposure to benzine. In support of his position, Dr. Martin cited articles from the National Cancer Institute and the American Cancer Society and stated that Mr. Kemp fits the typical age, gender, and ethnicity of someone diagnosed with CLL in the general population. Dr. Martin also noted that the American Cancer Society did not specifically list benzene as a risk factor for CLL.

After reading the literature and reports of the experts, the Office of Judges determined that there is no consensus in the medical community regarding a causal link between benzene exposure and CLL. On one side, Drs. Infante and Mehta assert that benzene exposure causes CLL, and on the other, Dr. Martin argues the opposite. Both sides cited numerous medical reports, studies, and literature in support of their positions. The Office of Judges noted that both Drs. Martin and Infante stated that opinions on causality in this context are professional judgment calls. The Office of Judges agreed. It found that Dr. Infante is an award winning professional epidemiologist with a

5

focus on occupational environmental epidemiology. He has written numerous articles on benzene exposure and its risks and has served as an expert witness in hundreds of cases. Dr. Mehta is a hematology and oncology physician who specializes in hematologic malignancies, such as leukemia and lymphoma. On the other side, Dr. Martin is an occupational medicine physician. The Office of Judges concluded that Drs. Infante and Mehta were more qualified in the area of benzene exposure and CLL causality than Dr. Martin. Further, the Office of Judges found that the opinions of Drs. Infante and Mehta support each other, whereas there is no medical opinion of record in support of Dr. Martin's findings. The Office of Judges therefore determined that the opinions of Drs. Infante and Mehta were the most persuasive medical opinions of record.

The Office of Judges noted that West Virginia Code § 23-4-1 provides the standard for compensability of occupational diseases. It requires

> "(1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of an employer and employee; and (6) that it appears to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction."

The Office of Judges found that the weight of the medical evidence supports a finding that Mr. Kemp's CLL was caused by his occupational exposure to benzene. The record establishes that he was exposed to significant amounts of benzene and benzene-containing products during his over thirty-nine years of employment, that he has a diagnosis of CLL, and that benzene exposure can cause CLL. The Office of Judges found that Dr. Mehta specifically opined that it was reasonably probable to conclude that Mr. Kemp developed CLL as a result of his exposure to benzene at work. The only medical evidence submitted by the employer to refute Dr. Mehta's opinion is the record review by Dr. Martin, which was not found to be as reliable.

The Office of Judges concluded that Mr. Kemp established a prima facia case for CLL due to occupational benzene exposure by showing that (1) a causal connection exists between the conditions under which his work was performed and his diagnosis of CLL, (2) that his CLL was a natural incident of his work as a result of exposure to benzene, (3) that the proximate cause of his CLL can be traced to his employment, (4) that his CLL did not develop as the result of a non-occupational hazard, (5) that the exposure which resulted in CLL was incidental to the character of the employer's business, and (6) that his development of CLL originated in a risk connected to his employment and flowed as a result of that employment. The Office of Judges held the claim compensable for CLL. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 20, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Kemp presented sufficient evidence that he had significant exposure to benzene throughout his thirty-nine years of employment and that such exposure resulted in the development of CLL. The Office of Judges and Board of Review did not err in finding that Mr. Kemp submitted sufficient evidence to find his claim compensable under West Virginia Code § 23-4-1.

Affirmed.

**ISSUED: April 5, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

7